UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Michael Gans</u>,
     Plaintiff

     v.                             Case No. 12-cv-279-SM
                                      Opinion No. 2013 DNH 093
<u>Amy Gant</u>,
     Defendant

**O R D E R**

Michael Gans brings this action to collect three loans his father (Harold) allegedly made in the 1980's and 1990's to Michael's uncle (Harold's brother, Ralph), both of whom are now deceased. Michael claims he is owed nearly $2 million, including more than $1.7 million in interest. The defendant, Amy Gant, is Michael's aunt (Ralph's widow). Amy moves to dismiss the complaint on several grounds. Michael objects.

For the reasons discussed, Michael's complaint is dismissed for lack of subject matter jurisdiction. And, because each of the three claims Michael seeks to pursue is plainly time-barred, affording him leave to amend the complaint to allege factual predicates sufficient to establish federal jurisdiction (here, diversity of citizenship) would be futile. Because the futility issue is, for all practical purposes, dispositive of the claims, the court's limitations analysis is set out in more detail than would otherwise be required. The limitations discussion is not

to support a limitations ruling (over which the court presently has no jurisdiction), but to describe the bases upon which the court concludes that an amendment would be futile.

## Standard of Review

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the essential elements of a viable cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal punctuation omitted).

The court may dismiss a complaint "when the pleader's allegations 'leave no doubt that an asserted claim is time-barred.'" Gorelik v. Costin, 605 F.3d 118, 121 (1st Cir. 2010) (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 509 (1st Cir. 1998)). See also Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113-14 (1st Cir. 2009) ("Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss

2

under Federal Rule of Civil Procedure 12(b)(6), provided that the
facts establishing the defense are clear on the face of the
plaintiff's pleadings.  Where the dates included in the complaint
show that the limitations period has been exceeded and the
complaint fails to sketch a factual predicate that would warrant
the application of either a different statute of limitations
period or equitable estoppel, dismissal is appropriate.")
(citations and internal punctuation omitted).

## Background

According to the complaint, between 1981 and 1995, Harold
Gans extended three loans to his brother, Ralph Gant.  They are
fairly described as follows:

1.  The 1981 Loan.  Evidenced by a letter, dated
    November 20, 1981, from Ralph to Harold
    (document no. 21-2), promising to repay
    principal of $100,000, plus interest from
    Ralph's "current credit account with [Harold]
    of about $26,000"; repayment to be made in
    two installments: $50,000 on December 1,
    1982, and the balance on December 31, 1983.

    That letter bears a notation, allegedly
    signed by Ralph on August 28, 1984, stating
    that the "Loan has been extended and is
    subject to call on 30 days written notice."

2.  The 1993 Loan.  Oral loan agreement;
    principal amount of $10,000; no specific
    terms of repayment specified; the complaint
    alleges that "an agreement to repay the funds
    with interest was implied by the parties'
    relationship."  Complaint at para. 14.

3

3.   The 1995 Loan. Evidenced by a written
     agreement, signed by Harold, Ralph, and
     Ralph's wife (Amy) in June of 1995 (document
     no. 21-3); principal loan amount of $50,900;
     interest rate specified as "the interest rate
     applicable to the mortgage of the Property"
     owned by Ralph and Amy in Shelter Island, New
     York; payable upon the sale of the Shelter
     Island property.

As security for the 1995 Loan, Ralph and Amy purportedly

transferred their ownership interest in the Shelter Island

property to Harold, subject to an existing first mortgage.[1]


     In addition, Ralph pledged to "make strenuous efforts to

achieve a sale of the Property at the earliest possible date."

The 1995 Loan at 1.  The agreement provided that the proceeds

from the sale of the Shelter Island property would be applied as

follows:

     a)   payment of the outstanding mortgage;

     b)   payment of the broker's commission;

     c)   re-payment to [Harold] of $50,900 plus
          interest.  The interest rate utilized shall
          be the interest rate applicable to the
          mortgage of the Property during the time
          period in question.

---

[1]   There is, however, no allegation that Ralph and Amy
actually conveyed the property to Harold by deed or other
recorded instrument.  Nor is there any allegation that Harold's
loan was formally secured by a mortgage.  Not surprisingly, then,
Michael does not claim that any of the notes is subject to the
twenty-year limitation period provided by N.H. Rev. Stat. Ann.
508:2 and 508:6.

4

> d)  balance, if any, to be paid to [Harold].  The
>     balance shall be applied to cover (1) the
>     remaining balance and (2) <u>debts incurred by
>     Ralph A. Gant to Gans in the past</u>.

<u>Id</u>. (emphasis supplied).  Presumably, the highlighted language is a reference to the 1981 Loan and the 1993 Loan.

Ralph and Amy sold the Shelter Island property in October of 1999.  No portion of the sale proceeds was paid to Harold.  Nearly eight years later, in August of 2007, Harold died intestate.  Prior to his death, Harold never demanded repayment of any of the money his brother, Ralph, owed him.  Nor, apparently, did the administrator of Harold's estate.  Nearly four years later, in February of 2011, Harold's widow, Eleanor, also died intestate.  Neither Eleanor nor the administrator of her estate demanded repayment of any of the money Ralph owed to Harold.  And, according to the complaint, each of the three loans remains unpaid to this day.

The plaintiff, Michael Gans, alleges that his parents (Harold and Eleanor) lived and died in Luxembourg.  And, says Michael, by operation of Luxembourg law, he "inherited Harold's assets and liabilities, including Harold's claims against Ralph and [Amy] for failure to repay the 1981 Loan, the 1993 Loan, and the 1995 Loan."  Complaint at para. 27.  It is, however, unclear whether Michael claims to have inherited those assets directly

from his father's estate (in approximately 2007) or from his
mother's estate (in approximately 2011).  Nevertheless, Michael
asserts that on May 18, 2012, he called the loans and demanded
that Ralph's widow, Amy, repay them.  No payments have been made.

On July 25, 2012, Michael filed suit in this court,
asserting that Amy is liable to him for the full amount of all
three loans, plus interest.  His complaint advances three claims:
breach of contract (count one); unjust enrichment (count two);
and constructive trust (count three).  In total, Michael says he
is owed approximately $2 million.  Amy denies that she is liable
on any of the loans that were extended to Ralph and notes, among
other things, that she was not even a party to the 1981 Loan or
the 1993 Loan.  Additionally, she asserts that the limitations
period applicable to each of the loans lapsed many years ago.

## Discussion

I.  <u>Subject Matter Jurisdiction</u>.

It is well-established that the party invoking federal
jurisdiction (here, Michael), bears "the burden of proving facts
sufficient to support a finding" that such jurisdiction exists.
<u>Topp v. CompAir, Inc.</u>, 814 F.2d 830, 839 (1st Cir. 1987).  In his
complaint, Michael asserts that this court has subject matter
jurisdiction over his state law claims under the provisions of 28
U.S.C. § 1332.  That is, he says the amount in controversy

exceeds $75,000 and the parties are of diverse citizenship. But, the factual allegations in his complaint are insufficient to support the legal conclusion Michael urges.

The complaint does not allege the citizenship of either Michael or the defendant, Amy. Instead, it simply asserts that "Michael Gans is an individual residing in Baech, Switzerland" and "Defendant, Amy Gant, is an individual residing [in] Portsmouth, New Hampshire." Complaint at paras. 1 and 2 (emphasis supplied). Mere allegations of "residency," rather than "citizenship," are insufficient to invoke this court's diversity jurisdiction. See generally Cameron v. Hodges, 127 U.S. 322, 325 (1888) ("This court has always been very particular in requiring a distinct statement of the citizenship of the parties, and of the particular State in which it is claimed, in order to sustain the jurisdiction of [federal] courts."). See also Garcia v. Bernabe, 288 F.2d 60, 61 (1st Cir. 1961) ("The allegations of residence are insufficient to establish jurisdiction [under 28 U.S.C. § 1332]."); Brooks v. Yawkey, 200 F.2d 663, 663-64 (1st Cir. 1953) ("[I]t is alleged in the complaint that the plaintiff-appellant's decedent at the time he brought this action about a year before his death was a 'resident' of Michigan, and that the defendants are 'residents' of Massachusetts. Clearly these are insufficient allegations of

diversity of 'citizenship' necessary for federal jurisdiction under Title 28 U.S.C. § 1332(a)(1)).[2]

Because the complaint fails to allege the citizenship of the parties, it does not plead a sufficient basis for the court to exercise jurisdiction under 28 U.S.C. § 1332.  Consequently, the complaint must be dismissed for lack of subject matter jurisdiction.

II.  <u>Michael's Claims are Time-Barred</u>.

Despite the absence of well-pled jurisdictional facts, it is likely that the actual facts would support the court's exercise of diversity jurisdiction over Michael's claims.  That is to say, Michael might well be able to amend his complaint to adequately allege diversity jurisdiction, since in all likelihood he is a citizen of Luxembourg and Amy is a citizen of New Hampshire. And, given that likelihood, it is appropriate, in the interests of judicial economy and conservation of the parties' resources, to consider whether such an amendment would be futile.

---

[2]   If, for example, Michael is a <u>citizen</u> of the United States, who happens to <u>reside</u> in Switzerland, the court would lack subject matter jurisdiction under 28 U.S.C. § 1332.  <u>See, e.g.</u>, <u>D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra</u>, 661 F.3d 124, 125-26 (1st Cir. 2011) (citing <u>Cameron</u>, 127 U.S. at 324).

Before addressing the substance of Michael's claims against Amy, it is probably worth noting that the parties agree that the writings evidencing the loans Harold extended to Ralph are not "negotiable instruments" and, therefore, they are not governed by the Uniform Commercial Code. Rather, they are governed by common law principles of contract. The parties also agree that New Hampshire's statute of limitations determines whether Michael's claims are timely. See generally Keeton v. Hustler Magazine, Inc., 131 N.H. 6 (1988).

Under New Hampshire law, breach of contract actions are subject to a three-year statute of limitations. N.H. Rev. Stat. Ann. ("RSA") 508:4, I. See also Coyle v. Battles, 147 N.H. 98, 100 (2001) ("To be timely, a contract claim must be brought within three years of when it arose. A cause of action arises once all the necessary elements are present. In the case of a contract action, it would be when the breach occurs.") (citations and internal punctuation omitted). So, for term or installment loans, the three-year limitations period runs from the date on which the obligation to repay was breached. See, e.g., Gen'l Theraphysical, Inc. v. Dupuis, 118 N.H. 277, 279 (1978). For demand obligations, however, New Hampshire's three-year limitations period begins to run immediately upon creation of the obligation to repay. See, e.g., Merrimack River Sav. Bank v. Higgins, 89 N.H. 154, 154-55 (1937) ("In the effect of the

9

statute of limitations the promise to pay on demand . . . is to pay forthwith.  The promise creates a matured obligation as soon as it is given."); <u>Newell v. Clark</u>, 73 N.H. 289, 291 (1905) (noting that because an action to enforce a demand obligation can be brought immediately upon the creation of that obligation, the limitations period begins to run from that date).

Absent exceptions not relevant here, equitable claims are subject to the same three-year limitations period.  <u>See, e.g.</u>, <u>Cote v. Cote</u>, 94 N.H. 372, 374 (1947) ("Unless it is inequitable, a court of equity in applying the doctrine of laches will follow substantially the analogy of the statute of limitations."); <u>Wentworth v. Wentworth</u>, 75 N.H. 547, 550 (1910) ("As a general rule, courts of equity, equally with courts of law, are bound by the statute of limitations.").  <u>See also</u> <u>Coyle</u>, 147 N.H. at 102 (holding that, as is the case here, plaintiff's unjust enrichment claim was subject to the same three-year limitations period as his breach of contract claim).

So, with respect to the 1981 Loan and the 1993 Loan (both of which are demand obligations), the three-year limitations would seem to have lapsed long ago.[3]  But, that limitations period may

---

[3]     The 1981 loan was originally extended in the form of a term note, payable in two installments on fixed dates.  Those dates passed and Ralph failed to make the required payments.  Arguably, then, the three-year limitations period began running

be tolled "by a party's acknowledgment of a subsisting debt with
an admission that the party is liable and willing to pay."  A & B
Lumber Co., LLC v. Vrusho, 151 N.H. 754, 756 (2005).  To toll the
limitations period under such circumstances:

> an acknowledgment of debt must be more than a
> recognition of debt; it must be an admission of
> liability for an unpaid debt that the party is then
> willing to pay.  Specifically, the admission must be
> direct and unqualified.  Awareness of a debt does not
> constitute an acknowledgment of an existing debt and a
> willingness to pay.

Id. (citations and internal punctuation omitted).


Viewing the complaint's allegations in the light most
favorable to Michael, and construing all plausible inferences in
his favor, the very best that can be said is that Ralph's
obligations to repay the 1981 Loan and the 1993 Loan were
"acknowledged" and incorporated by reference into the 1995 Loan,
when Ralph and Harold agreed that the balance of sale proceeds
from the Shelter Island property would be used to pay "debts
incurred by Ralph A. Gant to Gans in the past."  Under that
construction, the limitations period on all three of Ralph's
obligations to Harold would have begun running upon the sale of

_____

at that time and would have lapsed in December of 1986.  But, the
parties appear to have converted that term note into a demand
note, when Ralph acknowledged the existence of the debt and
allegedly made the notation that the "Loan has been extended and
is subject to call on 30 days written notice."  Document no. 21-
2.

the Shelter Island home - the date on which each of those
obligations became immediately due and payable.

All agree that Ralph and Amy sold the Shelter Island
property in October of 1999.  Complaint, at par. 24.  But,
neither Ralph nor Amy made any payments to Harold from the
proceeds of that sale.  Id.  They were, therefore, in default and
the three-year limitations period began to run; it lapsed in
October of 2002.  But, Harold never sought to enforce the Gants'
obligations to repay the loans prior to his death in 2007 -
nearly eight years after the sale of the property.  Nor did the
administrator of Harold's estate.

If Michael inherited Harold's claims against Ralph and Amy
directly from Harold's estate (in or around August of 2007),
Michael waited an additional five years before attempting to
enforce those claims, in July of 2012.  So, even if those claims
had been viable when Michael says he inherited them (they were
not), the three-year limitations period still would have lapsed
well before Michael sought to pursue them.[4]

---

[4]     Alternatively, if Harold's widow acquired (through
intestate succession) whatever contract rights Harold may have
had, she also never brought suit to enforce the Gants'
obligations prior to her death, nearly four years later - more
than eleven years after the latest date on which the Gants
arguably defaulted on their obligations.

12

Given the factual allegations set forth in the complaint, it is plain that the three-year limitations period applicable to each of the three loans at issue lapsed many years ago. Michael's breach of contract claim (count one), therefore, would be time-barred.  His equitable claims for unjust enrichment (count two) and constructive trust (count three), are subject to the same three-year limitations period, and would also be time-barred.  Like his breach of contract claim, those equitable claims accrued (and the limitations period began running), at the latest, when the Gants sold the Shelter Island property, but failed to make any payments to Harold.  See, e.g., Coyle, 147 N.H. at 102.  The complaint does not allege any basis for equitable tolling (in any event, it is difficult to imagine facts that would warrant tolling the limitations period beyond Harold's death).  Consequently, those claims would be time-barred as well.

III. Michael's Motion for Certification.

A further reason to deny Michael leave to amend his complaint is the fact that, despite his suggestion to the contrary, New Hampshire's law governing the limitations period applicable to demand obligations is clear.  For that reason, the court previously denied Michael's Motion for Certification of Issues to the New Hampshire Supreme Court (document no. 7).  In support of that motion, Michael asserted that New Hampshire precedent in this area of the law is "outdated," "lacks

13

significant analysis," and may be "contrary to the contracting parties' reasonable expectations."  Plaintiff's Motion for Certification (document no. 7) at 3.[5]

Certification of a question of law to the New Hampshire Supreme Court is appropriate when the court has before it "questions of law of this State which may be determinative of the case then pending in the certifying court and as to which it appears to the certifying court that there is no controlling precedent in the decisions of [the New Hampshire Supreme] [C]ourt."  N.H. Sup. Ct. R. 34.  This is not such a case.  There is controlling precedent governing the limitations period applicable to demand obligations.  It is, as noted above, Merrimack River Sav. Bank and Newell.  And, "[w]hen state law is sufficiently clear . . . to allow a federal court to predict its course, certification is both inappropriate and an unwarranted burden on the state court."  Manchester Sch. Dist. v. Crisman,

---

[5]     While New Hampshire's precedent in this area may be dated, that alone does not compel the conclusion that it is "outdated."  In fact, New Hampshire precedent appears to be consistent with well-established law in a number of other jurisdictions.  See, e.g., J. A. Bock, Annotation, When Statute of Limitations Begins to Run Against Note Payable on Demand, 71 A.L.R. 2d 284 (Supp. 2007) ("It appears to be well-settled that a promissory note payable 'on demand' is due immediately without a demand and that the statute of limitations commences to run against such a note from the date of its execution and delivery and not from the date of demand.").  See also Williston & Lord, 31 Williston on Contracts, § 79:29 (4th ed.) ("[The statute begins to run immediately on delivery of the obligation of a maker of a note . . . that is by its terms payable on demand.").

306 F.3d 1, 14 (1st Cir. 2002).  If the New Hampshire Supreme Court had not decided <u>Merrimack River Sav. Bank</u> and <u>Newell</u>, then perhaps a question might be appropriately certified.  <u>See</u> <u>U.S. Steel v. M. DeMatteo Constr. Co.</u>, 315 F.3d 43, 54 (1st Cir. 2002) ("certification is particularly appropriate where the question at issue is novel, and the law unsettled.").  But, whether the New Hampshire Supreme Court would stand by its decisions in <u>Merrimack River Sav. Bank</u> and <u>Newell</u>, or whether it might overrule those decisions and apply a different rule, is not a novel question of unsettled law suitable for Rule 34 certification.

When, in situations such as this, a federal court is called upon to apply state law, it must "take state law as it finds it: 'not as it might conceivably be, some day; nor even as it should be.'"  <u>Kassel v. Gannett Co.</u>, 875 F.2d 935, 950 (1st Cir. 1989) (<u>quoting</u> <u>Plummer v. Abbott Laboratories</u>, 568 F. Supp. 920, 927 (D.R.I. 1983)).  When state law has been authoritatively interpreted by the state's highest court, this court's role is straightforward: it must apply that law according to its tenor. <u>See Kassel</u>, 875 F.2d at 950.

Finally, while not dispositive, the court notes that a plaintiff who chooses a federal forum, rather than a state forum, in a diversity action "is in a peculiarly poor position to seek certification."  <u>Phoung Luc v. Wyndham Mgmt. Corp.</u>, 496 F.3d 85,

15

95 (1st Cir. 2007) (quoting <u>Venezia v. Miller Brewing Co.</u>, 626 F.2d 188, 192 n.5 (1st Cir. 1980)). <u>See also</u> <u>Kassel</u>, 875 F.2d at 950 ("If plaintiff, fully chargeable with knowledge of the decided New Hampshire cases, nonetheless chose to reject a state-court forum in favor of a federal forum, he is in a perilously poor position to grumble when we follow existing state precedent."); <u>Croteau v. Olin Corp.</u>, 884 F.2d 45, 46 (1st Cir. 1989) ("[O]ne who chooses to litigate his state action in the federal forum (as plaintiff did here) must ordinarily accept the federal court's reasonable interpretation of extant state law rather than seeking extensions via the certification process.").

## Conclusion

Plaintiff's complaint is dismissed for lack of subject matter jurisdiction. And, while the court would normally grant, sua sponte, leave to amend to plead sufficient jurisdictional facts, such an amendment would serve no purpose in this case. The three claims Michael seeks to advance against Amy are plainly time-barred under applicable New Hampshire law, and there is no cause to certify to the New Hampshire Supreme Court questions regarding potential modification of New Hampshire's limitations period as applied to this case.

For the foregoing reasons, defendant's Motion to Dismiss (document no. 21) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 3, 2013

cc:  Michael C. Harvell, Esq.
     Joseph L. Bierwirth, Jr., Esq.

17